IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
PAUL SMITH, : CASE NO. 1:06 CV 00467
:
Petitioner, :
: MEMORANDUM OPINION AND
-vs- : ORDER
:
JOEL PETKOVICH, Warden, :
:
Respondent. :
------------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 1 March 2006, Petitioner Paul Smith ("Mr. Smith") filed this timely habeas, pursuant to 29 U.S.C. § 2254, setting forth the following three grounds for relief:

A. Ground one: Mr. Smith was denied his right to confrontation of witnesses under the Sixth Amendment because the trial court permitted testimony about the out-of-court statements of a non-testifying person.

B. Ground two: Mr. Smith received a ten-year sentencing enhancement as a Repeat violent Offender pursuant to O.R.C. 2929.14 and 2941.145, which are violative of the Sixth Amendment because they permit imposition of a sentence beyond the normal statutory maximum on the basis of findings made b y a trial judge alone and not submitted to a jury to be proven beyond a reasonable doubt; moreover the trial court denied Mr. Smith due process under the Fourteenth Amendment because the trial court did not make the findings required by the statute, nor was there sufficient evidence to support the findings in any event.

C. Ground three: Mr. Smith was denied his right to due process and trial by jury when the prosecutor argued beyond the evidence in closing argument, made personal attacks on defense counsel, and improperly commented on the Defendant's failure to present evidence at trial.

(Doc. 1).  Respondent filed a return of writ on 1 June 2006 (Doc. 7), and the matter was assigned to Magistrate Judge Patricia Hemann for a Report and Recommendation ("R&R").

In her careful and thorough R&R, Magistrate Hemann recommends the Court: grant Mr. Smith's petition with respect to the claim in his second ground for relief that his independent, nine-year sentence, as a repeat offender pursuant to § 2929.14(D)(2), was contrary to clearly established federal law; overturn Mr. Smith's nine-year sentence as a repeat violent offender, giving the state the option of a new sentencing trial; and, overrule all other assignments of error.  (Doc. 8, pp. 38-39).

Respondent filed objections to Magistrate Hemann's recommendation on 31 July 2006, arguing first, that no constitutional error occurred in the trial Court's judicial fact-finding pursuant to § 2929.14 because federal law was not clearly established.  (Doc. 10).  Further, the Respondent maintains the error was harmless.  Id.  On 30 January 2007, the Respondent also submitted an updated authority – Shafer v. Wilson, 2007 WL 315760 (N.D. Ohio Jan.30 2007) – in support of its position that a Blakely error is harmless in light of the Ohio Supreme Court decision in State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006).  (Doc. 11).

As no objections have been raised to the remainder of the R&R, the Court must assume that the parties are satisfied with all aspects of the R&R but the Blakely error contained in the repeat violent offender sentence.  Any review by this Court, beyond the Blakely error dispute, would be a duplicative and inefficient use of the Court's limited resources. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of Health and

Human Services, 932 F.2d 505 (6th Cir. 1991); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts provides, "[t]he judge must determine de novo any proposed finding or recommendation to which objection is made. The judge may accept, reject, or modify any proposed finding or recommendation."

For the reasons set forth below, the Court adopts in its entirety Magistrate Judge Hemann's recommendations.

## BACKGROUND

The Federal Magistrates Act requires a district court to conduct a de novo review only of those portions of the R&R to which the parties have made an objection. 28 U.S.C. § 636(b)(1). Moreover, the factual findings of a state court are presumed to be correct. A federal court may only diverge from a state court's factual findings if the petitioner shows by clear and convincing evidence that the findings are erroneous. 28 U.S.C. § 2254(e)(1).

The Court of Appeals, Eighth Appellate District, Cuyahoga County, Ohio delineated the facts of this case on direct appeal.[1] Because Mr. Smith has not rebutted

---

[1] The state appellate court heard Mr. Smith's direct appeal of his second conviction. Mr. Smith's first conviction, on 27 January 1997, was overturned and a new trial was ordered when the federal district court, in response to Mr. Smith's first writ of habeas corpus on 5 December 2001, found that the admission of a key witnesses' statement violated the Petitioner's rights under the Confrontation Clause and that the violation was not harmless error. See Smith v. Wilson, 231 F. Supp. 2d 650 (N.D. Ohio 2002).

these factual findings by clear and convincing evidence, the Court presumes they are correct and, accordingly, recites the following facts:

> On November 19, 1996, defendant and co-defendant Iris Wilson were indicted for felonious assault with firearm specifications pursuant to R.C. 2941.141 and 2941.145. The state additionally charged defendant with repeat violent offender specifications pursuant to R.C. 2929.01(EE) which alleged that he had been convicted of aggravated battery in Florida in 1988 and 1989.
> The matter proceeded to trial in December 1996. Within this proceeding, the state dismissed the firearm specification pursuant to R.C. 2941.141, and also dismissed its case against Iris Wilson. Defendant was eventually convicted of felonious assault and the remaining firearm specification, and this court affirmed the conviction in State v. Smith (June 18, 1998), Cuyahoga App. No. 72089. The Supreme Court of Ohio denied defendant leave for further appeal. The Supreme Court of the United States granted certiorari, however, and remanded the matter back to this court for further consideration in light of Lilly v. Virginia (1999), 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). This court affirmed defendant's conviction upon further consideration. See State v. Smith (Dec. 9, 1999), Cuyahoga App. No. 72089.
> On September 13, 2002, the United States District Court for the Northern District of Ohio, Eastern Division, granted defendant's petition for habeas corpus, concluding that prejudicial error occurred in connection with the admission of Iris Wilson's written statement.
> The state's retrial of this matter commenced on January 6, 2003, before a jury. At this time, the state and defense counsel stipulated that the repeat violent offender specifications would be bifurcated and tried to the court.
> The state presented the testimony of Kenyatta Wells, and Cleveland Police Officers Kennedy Jones, Xavier Lynch, Robert Minor, Thomas Lucey, Kevin Freeman, and Thomas Wheeler.
> Kenyatta Wells testified that on August 1, 1996, he was with Mock Rodgers, a.k.a "Bootsie," and Chantell Jones at a recording studio located at East 55th Street and Marginal Road. They went to the Calypso Bar to get something to eat. As they were returning to the studio in Rodgers' green pickup truck, they stopped at a light on DuPont Avenue. A black, four-door vehicle pulled up and the woman driving the car said, "Hey Bootsie, somebody wants to holler at you." Wells, the driver of Rodgers' pickup, proceeded to the next light. At this point, the same car approached a second time, and the female driver repeated, "Hey Bootsie, somebody wants to holler at you." The passenger then got out of the black car and ran over to the passenger side of the pickup truck. He said, "What's up,

4

mother f* * * * *," then placed his hand into the truck and started shooting. Wells drove off and the black vehicle followed.

Wells testified that, as they sped away, Rodgers screamed, "I am hit, I am hit," and identified the assailants as Paul and Iris. Wells drove the truck to the Finast Supermarket located at Superior and Lakeview. Wells realized that he had been shot in the leg, and was taken away by ambulance before speaking with police. Rodgers and Jones did speak with the police, however. Wells further testified that he spent four days in the hospital. Thereafter, on August 9, 1996, he and Rodgers went to the police station and Wells made a statement which provided in relevant part as follows:

"I was stopped by the traffic light in the center lane. At this moment the black Park Avenue 4 dr. pulled up on the right of the truck[.] At this moment the female by the name of Iris rolled down her window and stated that someone wanted to talk to Bootsy (sic). I then asked Bootsy (sic) if he knew who the female was as I was pulling the vehicle up. The car then pulled up some more and the female driver stated again that someone wanted to talk to him. He then notice (sic) that the driver was the female name (sic) Iris. At this moment someone exit (sic) the auto on the passenger side and started to walk up on the passenger side of the truck and stated, "What's up mother f* * * * * " and then started to shoot into the truck. At this moment my friends started saying take off take off. I then drove off going to the Finast Store located at Lakeview and Superior.

"Q-Do you know who the shooter is?

"A-Yes, Paul Smith."

Wells identified defendant in court. He testified that he had seen defendant many times at Rodgers' house, that he was present when defendant and Rodgers' discussed business matters concerning their real estate dealings, and that he was aware of problems between the two men. He further testified that he knew Iris, the driver of the black car, through the father of her baby.

On cross-examination, Wells acknowledged that in the initial portion of his statement, he said that "someone" shot him. He also claimed that in his previous testimony, he had mistakenly said that he did not know Iris and had never seen her before. He also stated that he could not recall his previous testimony in which he indicated that he did not recognize Iris and Paul after the shooting and that Rodgers told him the identity of the assailants. Cleveland Police Officer Xavier Lynch testified that he was working as a security guard at the Finast Supermarket located at 11906 Superior in Cleveland when Wells, Rodgers and a female rushed in and exclaimed that Wells had been shot. Officer Lynch called for police and EMS to come to the store. Rodgers wanted to get away from the front of the store with its glass windows and said, "The guy is going to kill me." After the police arrived, however, he provided the police with the name of

5

the assailant, and a description of him. He also reported that he was with a woman named Iris and that they were driving a black Park Avenue.

Cleveland Police Officer Kennedy Jones testified that at 11:23 p.m., on August 1, 1996, he received a call to respond to the Finast Supermarket at East 119th Street and Superior. Wells had been transported to the hospital when Officer Jones arrived, but Chantell Jones and Rodgers said that a Jamaican named Paul shot Wells at East 110th Street near DuPont.

Robert Minor, formerly a crime scene investigator with the scientific investigative unit of the Cleveland Police Department, testified that he processed Rodgers' pickup truck for evidence. Minor photographed the inside and outside of the vehicle. After lifting a rag from the floor of the driver's seat, he observed blood spatter on the rug, and a hole in the floor mat. He also located a pellet on the floor of the driver's side and a spent shell casing on the floor of the passenger's side. Minor further testified that he observed a bullet hole in the exterior of the vehicle, on the passenger side, and the passenger's side window was shattered.

Thomas Lucey testified that in August 1996, he worked in the forensic laboratory unit of the Cleveland Police Department. And that he examined the spent bullet slug and copper bullet jacket, which were recovered in this matter. According to Lucey, the slug and the copper jacket both came from a .45 caliber weapon.

Cleveland Police Officer Kevin Freeman testified that, based upon information he received in this matter, he was looking for a black man named Paul, and his girlfriend named Iris Wilson. Freeman testified that he knew Wilson had been involved with Kenneth Potts and he stopped her near Potts' house. At this time, Wilson provided him with a driver's license with the name "Renee Davis." Freeman knew that this was not the correct name and Iris was later arrested.

Cleveland Police Detective Thomas Wheeler testified that he was assigned to do follow-up investigation in the matter. The initial reports of the incident indicated that the assailant was named "Paul," and did not list a last name. Later, on August 9, 1996, Wheeler met with Rodgers and Wells. Wells provided a narrative of what had happened and Wheeler typed it. Rodgers did not make a statement.

Following the presentation of the state's case, defendant rested.

The jury convicted defendant of felonious assault and the firearm specification, and the trial court set the repeat violent offender specifications for hearing on February 14, 2003. Defendant's trial counsel subsequently stipulated to the specifications and the trial court found defendant guilty of both repeat violent offender specifications.

On February 28, 2003, the court held a sentencing hearing and sentenced defendant to consecutive terms of three years for the firearm specification, eight years for the felonious assault charge, and nine years for the remaining specifications.

State v. Smith, 2004 WL 1472081 (Ohio App. 8th, July 1, 2004).

The trial court made the following findings during the course of the Petitioner's 28 February 2003 sentencing hearing:

> Obviously, this Court now has heard the testimony of the — regarding the facts of this case twice, back in 1996, as well as most recently a month ago.
> This Court has the pre-sentence investigative report, which indicates the defendant does have a criminal history dating back to '87, where he had an aggravated assault with a deadly weapon.
> In 1988, he was charged and convicted of smuggling marijuana into a jail.
> In 1989, he was convicted of aggravated assault, with a count of battery, in which the defendant had a homemade knife or shank that he used to cause injuries to another at a correctional institution in Florida.
> Then, in 1993, he made his way to Cleveland and was indicted for forgery, with two counts of uttering, two counts of possession of criminal tools.
> When this case was originally indicted, the defendant was further indicted for aggravated murder, in which two victims died. The witnesses were not available, and that trial could not have gone forward. That case was dismissed, although it's certainly subject to re-indictment.
> Under 2929.14, I believe it's, (D)(2)(a), it states that if the Court finds that the repeat violent offender, in committing the offense, caused any physical harm that carried a substantial risk of death to a person, the Court shall impose the longest prison term from the range of terms authorized for the offense under Division A of the this section.
> In this case, the defendant engaged in a car chase, pulled over not once but twice, and the second time he got out of his vehicle, approached the passenger's side of the victim's vehicle and fired several shots into the vehicle, one of which did strike the defendant.
> Based on the facts of this case, as well as the pre-sentence investigative report, the Court believes that any sentence [illegible] would deviate from the prior sentence [illegible] inadequate to punish the offender and protect the public from future crime.
> This was a serious case. There was a substantial risk of death. Physical harm was caused. It would be demeaning to the seriousness of the offense to hold otherwise.
> With respect to the felonious assault, the Court is going to impose the maximum sentence of eight years, with the three-year firearm specification, which must be served prior to and consecutive to the eight-year sentence.

> With respect to the repeat violent offender specification, the Court
> will impose a nine-year sentence, which will be served consecutive.

Tr. At 336-38.

On 21 May 2003 the Court docketed Mr. Smith's sentence of "three- years on the firearm specification to be served prior to and consecutive with time of eight-years on the base charge and given nine-years on the repeat violent offender specification to be served consecutive to the sentence for a total confinement of twenty years."

## LAW AND ARGUMENT

**A.  Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act, ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling here as the instant petition was filed after the Act's effective date.  Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed.2d 481 (1997).  The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  See also Miller v. Francis, 269 F.3d 609, 614 (6th Cir.2001).

The United States Supreme Court outlined the proper application of § 2254(d) in Williams v. Taylor, 529 U.S. 362 (2000).  To justify a grant of habeas relief under the

8

"contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." Miller, 269 F.3d at 614 (quoting Williams v. Taylor, 529 U.S. 362 (2000)). Meanwhile, "under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 1523. The Sixth Circuit holds that, even if a federal court could determine that a state court incorrectly applied federal law, the court still could not grant relief unless it also finds that the state court ruling was unreasonable. Simpson v. Jones, 238 F.3d 399, 405 (6th Cir. 2000).

### B. Consideration of Mr. Smith's Blakely claim.

The only question under consideration is whether the court imposed independent nine-year sentence on Mr. Smith as a repeat violent offender under O.R.C. §§ 2929.14 and 2929.12, was a Blakely violation because the sentencing court engaged in judicial fact-finding to impose the separate sentence.

The Blakely claim is clearly cognizable in this instance. The Sixth Circuit will not apply Blakely, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), retroactively to cases on collateral review. See Humphress v. United States, 398 F.3d 855, 860-63 (6th Cir. 2005). Mr. Smith's conviction became final on direct review on 1 March 2005 , after Blakely was decided.

Mr. Smith is entitled to habeas relief if his independent sentence as a repeat violent offender pursuant to R.C. §§ 2929.14(D)(2)(b) and 2929.12 was contrary to, or

9

an unreasonable application of, clearly established federal law, as established by the United States Supreme Court. 28 U.S.C. § 2254(d). In Blakely, the United States Supreme Court held that a statutory sentencing scheme that allows a judge to enhance a sentence based on factual findings not found by a jury, admitted by the defendant, or reflected in the jury verdict is unconstitutional. Blakely, 542 U.S. at 303. As the Ohio Supreme Court determined in Foster, certain provisions of Ohio's sentencing guidelines – including R.C. § 2929.14(D)(2)(b) – permitted sentencing enhancements based on judicial fact-finding, and thus violate Blakely.[2]

As stated at the time of Mr. Smith's sentencing Section 2929.14(D)(2)(b) of the Ohio Revised Code allowed, that

> (b) If the court imposing a prison term on a repeat violent offender imposes the longest prison term from the range of terms authorized for the offense under division (A) of this section, the court may impose on the offender an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if the court finds that both of the following apply with respect to the prison terms imposed on the offender pursuant to division (D)(2)(a) of this section and, if applicable, divisions (D)(1) and (3) of this section:
>
> (i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

---

[2]Foster specifically observed that "because R.C. 2929.14(D)(2)(b) and (D)(3)(b) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before repeat-violent-offender and major-drug-offender penalty enhancements are imposed, they are unconstitutional. Foster, 109 Ohio St.3d at 25, 845 N.E.2d 470 (citing Apprendi, 530 U.S. 466, 120 S.Ct. 2348, 147 L. Ed.2d 435 (2000) and Blakely, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004)).

> (ii) The terms so imposed are demeaning to the seriousness of the offense because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.

Once the trial court sentenced Mr. Smith to the maximum eight year sentence of imprisonment for felonious assault, it was then allowed to impose an independent additional sentence if the Petitioner was a repeat violent offender and if the court found pursuant to the factors in O.R.C. § 2929.12 that the defendant would be a likely recidivist and that the crime was unusually serious.  At a hearing on 14 February 2003, Mr. Smith stipulated to the truth of the facts necessary to allow the court to find that he was a repeat violent offender.

However, to make the determination that the crime was more serious than normal, the judge had to find at least one of the following pursuant to § 2929.12(B):

> (B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
>
> (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
>
> (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
>
> (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
>
> (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

11

> (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
>
> (6) The offender's relationship with the victim facilitated the offense.
>
> (7) The offender committed the offense for hire or as a part of an organized criminal activity.
>
> (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
>
> (9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

The Magistrate Judge concluded that "[a]n additional sentence based on these judicial findings of fact is unequivocally barred by the holdings in Apprendi." (Doc. 8, p. 33). In its objections, the Respondent maintains to the contrary, that "[i]n light of the uncertainty, confusion and conflicting opinions surrounding Blakely issues, the Court of Appeals decision simply cannot be considered an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States." (Doc. 10, p. 6).

The Court finds the Magistrate Judge has the better of the arguments. The holding in Apprendi established that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 489. Mr. Smith received the statutory maximum of eight years for felonious assault. That the trial court then resorted to judicial fact-finding to establish a separate additional sentence of

12

nine years predicated on the Petitioner's repeat offender status and the assignment of the eight year statutory maximum for felonious assault, clearly marks the additional sentence as unconstitutional under Apprendi.  Accordingly, Mr. Smith's independent nine-year sentence is contrary to clearly established federal law and he is entitled to habeas relief on the merits.

However, the respondent, further, argues that because the failure to submit a sentencing factor to the jury is not a "structural" error, Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 2551-53, 165 L. Ed.2d 466 (2006), the Petitioner's Blakely claim must be subject to harmless error analysis even if construed as a constitutional violation.

In this Circuit, Courts construe an error as harmless if "none of the defendant's substantial rights have been affected by the error." United States v. Oliver, 397 F.3d 369, 381 (6th Cir. 2005).  In the sentencing context under consideration here, the government bears the burden of demonstrating "with certainty that the error at sentencing did not 'cause[ ] the defendant to receive a more severe sentence.' " Emerick v. Wolfe, 2006 WL 3500005, at *2 (S.D. Ohio Dec.5, 2006) (quoting Oliver, 397 F.3d at 379).  "[R]emand for an error at sentencing is required unless we are certain that any such error was harmless- i.e. any such error 'did not affect the trial court's selection of the sentence imposed.' " United States v. Hazelwood, 398 F.3d 792, 801 (6th Cir. 2005).

Federal district courts in Ohio have staked out two differing positions on the question of whether Blakely violations constitute harmless error in light of Foster.  The Respondent's rely on the position enunciated in Shafer v. Wilson, 2007 WL 315760

13

(N.D. Ohio Jan.30 2007), finding a Blakely error harmless in light of Foster. See also Flannery v. Hudson, 2008 WL 1787155 (N.D. Ohio, April 17, 2008); Rettig v. Jefferys, 2008 WL 1775255 (N.D. Ohio April 15, 2008). In order to bring several provisions of the Ohio sentencing guidelines within the ambit of Booker and Blakely, Foster severed several provisions, including 2929.14(D)(2)(b), declaring that "[a]fter the severance, judicial fact-finding is not required before imposition of additional penalties for repeat-violent-offender [ ] specifications." Id. at 29-30.

Due to Foster's position "that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences," the Court in Shafer concluded that the error was harmless because, upon re-sentencing, the trial Judge would have full discretion to re-sentence the petitioner to exactly the same sentence. See Shafer, 2007 WL 315760 at *11. In Shafer the trial court made judicial findings that the petitioner showed no remorse and abused a position of trust to arrive at a sentence above the presumptive minimum. In finding harmless error, the Shafer court reasoned:

> After the Ohio Supreme Court's decision in State v. Foster, sentencing judges are free to impose any sentence within the applicable statutory range without the need to make any specific judicial findings. . . . Stated otherwise, because Ohio remedied its unconstitutional sentencing regime by making its guidelines advisory, there is no reason to believe the Petitioner would receive a more favorable sentence if the Court grants his habeas request for relief. In light of the fact that the Supreme Court has held that Blakely violations are not "structural" errors that require automatic reversal, we therefore agree with Respondent that no basis exists for granting the Petitioner's request for relief despite the fact that his re-sentencing clearly did violate Blakely.

Id.

Several courts have rejected Shafer's reasoning regarding harmless error. See Cvijetinovic v. Eberlin, 2008 WL 918576 (N.D. Ohio March 31, 2008); Villagarcia v. Warden, Noble Correctional Inst., 2007 WL 1028528 (S.D. Ohio March 30, 2007); Noland v. Hurley, 523 F. Supp. 2d 659 (S.D. Ohio 2007); Perry v. Money, 2007 WL 2236634 (N.D. Ohio July 31, 2007); Crotts v. Bradshaw, 2007 WL 3283841, at *17 (N.D. Ohio Oct. 30, 2007). The Court in Villagarcia argued against the Shafer Court's position by reasoning that the harmless error standard cannot be satisfied by the mere speculation that an error could be harmless:

> The flaw in this reasoning is that it equates a possibility of no actual prejudice in terms of the eventual sentence received with an actuality of no prejudice resulting from a constitutional error.... [S]peculation that a judge might repeat his or her sentence without explicit factfinding does not render an error harmless as a certainty. The former scenario involves the realities of state law-either it affords an avenue to render the error harmless or it does not-while the latter presupposes a reality in which but one outcome is certain. But because more than one outcome is possible upon re-sentencing, basing harmlessness on assumed certainty is flawed. It converts the concept of harmless error in this context into a doctrine of *always* harmless error. Such conversion is especially dangerous when, as here, the possibility of a different sentence must logically preclude any habeas court from saying for a *certainty* that error is harmless. See United States v. Hazelwood, 398 F.3d 792, 801 (6th Cir.2005) ("Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless").

Villagarcia, 2007 WL 1028528 at *4 (emphasis included).

The Court finds the reasoning in Villagarcia persuasive. The acknowledged Blakely sentencing error cannot be construed as harmless if Mr. Smith could receive a lesser sentence absent unconstitutional judicial fact-finding. Accordingly, because Mr. Smith could receive a lesser sentence upon re-sentencing the Court finds the Blakely violation is not harmless error.

15

**CONCLUSION**

The Court adopts and affirms Magistrate Judge Hemann's Report and Recommendation with respect to all three grounds of Mr. Smith's habeas petition and overrules the Respondent's objections.  Accordingly, the Court grants Mr. Smith's petition only as it pertains to the claim in his second ground for relief that his nine-year sentence as a repeat offender pursuant to R.C. §§ 2929.14(D)(2) and 2929.12 was contrary to clearly established federal law.

The Court hereby vacates Mr. Smith's independent nine-year sentence as a repeat violent offender.  The State of Ohio shall within ninety days elect to re-sentence Paul Smith with regard to the repeat violent offender portion of his sentence.  Mr. Smith's remaining habeas grounds are dismissed.

IT IS SO ORDERED.

    /s/Lesley Wells
   UNITED STATES DISTRICT JUDGE